IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE PAMPERED CHEF, | ) |
| Plaintiff, | ) |
| vs. | ) No. 10 C 1399 |
| SANDY ALEXANIAN, DON FUNT, CHRISTINE LAURICH, LORI MITCHELL, VALERIE NEWTON, and SHANNON PELL, | ) Magistrate Judge Jeffrey Cole |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

On May 7, 2010, Ms. Alexanian, acting through counsel – but not present counsel for her and the other defendants – agreed to the entry of an "Agreed Preliminary Injunction" barring her from, among other things, soliciting any person who is then under contract as a member of the company's independent contractor sales force to sell products or services for any other company until February 1, 2012.[1] Ms. Alexanian's new counsel says that she agreed to the preliminary injunction "[t]o avoid the hardships of Plaintiff's scorched earth litigation tactics...." The agreed preliminary injunction provided that "[e]ach of the parties may file a motion to modify or vacate this Agreed Preliminary Injunction." Quite apart from that provision, the court would have had the power to do so anyway.

Thereafter, on July 14, 2011, following a several day evidentiary hearing and extensive

---

[1] This two-year period matched the two-year period in the non-solicitation clause in Ms. Alexanian's contract with Pampered Chef.

briefing, I denied The Pampered Chef's motion for preliminary injunction. *The Pampered Chef v. Alexanian*, _F.Supp. 2d_, 2011 WL 2746460 (N.D.Ill. 2011). By this time, Ms. Alexanian was no longer the only defendant – as she was when the case was filed. There were now seven other defendants. Not surprisingly, following the denial of the plaintiff's motion for preliminary injunctive relief, Ms. Alexanian wanted the agreed preliminary injunction, to which she voluntarily consented, to be vacated. The Pampered Chef has objected, contending that Ms. Alexanian made a deal and she should be required to live up to it.

The parties argue at some length over the appropriate standard to be applied in ruling on the motion. But, even permanent injunctions entered by consent may be modified in response to changed circumstances. *See United States v. Swift & Co.,* 286 U.S. 106, 114 (1932)(Cardozo, J.). *See also Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 393 (1992). It is Ms. Alexanian's contention that to continue the injunction against her in light of the denial of the motion for preliminary injunction sought against her co-defendants would be exceedingly unfair since the agreed findings in the preliminary injunction against her "are inconsistent with the Court's recent findings set for in the Court's opinion denying Plaintiff's motion for preliminary injunction against Defendants Mitchell and Pell." To maintain the injunction against Ms. Alexanian, it is argued, would also be inconsistent with the refusal to enjoin Ms. Pell and Ms. Mitchell from engaging in the same conduct that Ms. Alexanian cannot engage in.

The Pampered Chef understandably takes a different view, arguing that while consent decrees are judicial acts, they have often been recognized as having many of the attributes of a contract voluntarily undertaken, when parties have chosen to submit to a consent decree instead of seeking a more favorable judgment upon litigation, "'their burden under Rule 60(b) is perhaps even

more formidable than had they litigated and lost.'" *W.L. Gore & Associates, Inc. v. C.R. Bard, Inc.,* 977 F.2d 558, 561 (Fed. Cir. 1992). *Gore*, like other cases cited by The Pampered Chef involved a final order under Rule 60(b) and thus have limited utility here. In this case, what is involved is an interlocutory order that is subject to modification at the court's discretion.

At first blush, Ms. Alexanian's argument is appealing. After all, why should she be enjoined from engaging in the kind of solicitation that her co-defendants are free to pursue until some further order of court. The argument would be unanswerable if the July 14th Memorandum Opinion and Order had finally resolved the enforceability of The Pampered Chef's non-solicitation clause. But it was not, and it is important to underscore the limited nature of the determinations made in that opinion and in any denial of a motion for preliminary injunction.

A preliminary injunction is preliminary, and involves "significantly different" inquiries than resolution of a case on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 393(1981). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Id*. at 395. Consequently, a plaintiff is not required to prove its case in full at the preliminary injunction stage, and the findings of fact and conclusions of law made by a court granting or denying a preliminary injunction are not binding at a trial on the merits. *Id*. Thus understood, the seeming unfairness of requiring Ms. Alexanian to live up to the agreement she voluntarily made at the beginning of the case – an agreement which she and her counsel had concluded was beneficial to her interests – vanishes. No one can anticipate events still in the womb of time. It is for that reasons that requiring compliance with voluntarily assumed obligations does not assume or require clairvoyance. Parties disappointed by the unfolding of events following those undertakings are not relieved from their obligations.

But, Ms. Alexanian argues, Judge Zagel's opinion in *Tempel Steel Co. v. Bayer,* 1997 WL 899753 (N.D.Ill. 1997) counsels that her motion to vacate the injunction be granted. There, the parties agreed to a Consent Temporary Restraining Order on April 11, 1996, which enjoined defendants from selling certain products. "A preliminary injunction hearing was set to determine whether Defendants misappropriated any trade secrets in the Original Epstein Tester and *whether injunctive relief of the Consent Temporary Restraining Order should be continued.*" *Id.* at *1. (Emphasis supplied). At the end of the hearing, Judge Zagel concluded that there was no trade secret, no misappropriation and that the circuitry that was in question could be readily duplicated from the public domain. He also concluded that there is no violation of common law fraud and no unfair competition under the Lanham Act with respect to the New Epstein Tester. *Id*. at *6.

Based on these findings, Judge Zagel vacated certain of the injunctive relief in the Agreed TRO of October 11. However, other portions of the TRO remained in effect, as part of the preliminary injunction. *Id.* His vacating of those portions of the agreed TRO occurred because the very purpose of the preliminary injunction hearing was to determine what should and what should not survive the TRO. The present case is thus not comparable to *Tempel Steel*.

The Motion to Vacate Agreed Preliminary Injunction [No. 265] is denied.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE: 10/7/11

4